Herward A. VOGEL, Appellant 19,374 and Minnesota Mining and Manufacturing Company, a Corporation of Delaware

v.

Michael Edward Benet JONES, and Imperial Chemical Industries Limited, a Corporation of Great Britain.

Appeal of MINNESOTA MINING AND MANUFACTURING COMPANY, a Corporation of Delaware.

Nos. 19374, 19375.

United States Court of Appeals, Third Circuit.

Argued April 19, 1971.

Decided May 17, 1971.

Stanley G. DeLaHunt, Kinney, Alexander, Sell, Steldt & DeLaHunt, St. Paul, Minn. (William F. Tompkins, Jr., Richard A. Graddock, Lum, Biunno & Tompkins, Newark, N. J., William G. Ewert, Edward W. Callan, St. Paul, Minn., on the brief), for plaintiffs-appellants.

Edgar H. Martin, Cushman, Darby & Cushman, Washington, D. C. (Paul N. Kokulis, Washington, D. C., Raymond M. Tierney, Jr., Shanley & Fisher, Newark, N. J., John J. McAleese, Jr., Synnestvedt & Lechner, Philadelphia, Pa., on the brief), for defendants-appellees.

Before SEITZ, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This case presents another chapter in the continuing saga regarding the authority of federal district courts to order discovery in patent interference proceedings pursuant to 35 U.S.C. § 24.[1]

■ Vogel, a Minnesota resident, and Jones, a British subject and resident, are the two named parties to Patent Office Interferences No. 96,167 and No. 96,500. The real parties in interest, however, are their respective assignees, Minnesota Mining and Manufacturing Company ("3M"), a Delaware Corporation whose principal office is at Saint Paul, Minnesota, and Imperial Chemical Industries, Limited ("ICI"), a British corporation. The dispute between 3M and ICI concerns moldable plastic compositions called polyarylsulfones. 3M filed its two patent applications on May 13, 1963; six months later ICI filed the single patent application involved in both interferences. Since ICI relied on its prior British filings of November 6, 1962 and March 13, 1963 (see 35 U.S.C. § 119), ICI was declared by the Patent Office to be the senior party in Interference No. 96,500 but 3M remained the senior party in Interference No. 96,167.[2]

■ 3M initiated the discovery proceedings here in question on August 6, 1970, in the United States District Court for the District of New Jersey, by filing a "Notice of Ancillary Proceedings for Discovery Under 35 U.S.C. § 24," and a request for production of documents by Jones and ICI.[3] Copies of the Notice and the request for documents were delivered to Jones' counsel of record in the Interference, to ICI in England and to ICI America, Inc., a Del-

---

1. *See* In re Natta, 259 F.Supp. 922 (D. Del.1966) ; Natta v. Zletz, 379 F.2d 615 (7th Cir. 1967) ; In re Natta, 388 F.2d 215 (3rd Cir. 1968) ; Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968) ; Babcock & Wilcox Co. v. Foster Wheeler Corp., 432 F.2d 385 (3rd Cir. 1970). For a description of the Patent Office proceedings in an interference, see In re Natta, 388 F.2d at 216.

2. The Patent Office decided on September 8 and October 13, 1970, that no testimony period whatever would be permitted in Interference No. 96,167. In such circumstance, any discovery sought by either party pursuant to Interference No. 96,167 would appear to be of irrelevant matters, and therefore improper. See Fed.R.Civ.P. 26(b) ; cf. Babcock & Wilcox, *supra*, 432

F.2d at 388; In re Natta, 388 F.2d at 220. Yet, conceivably the subject matter of Interference No. 96,167 might be so interwoven with that of No. 96,500 that the requirement of relevance can be met by the party seeking discovery. Accordingly, the motion to dismiss as moot will be denied.

3. 3M's testimony period in the Patent Office in Interference No. 96,500 was extended several times beginning in 1969, and eventually terminated on November 2, 1970. However, 3M has petitioned the Patent Office to suspend proceedings pending decision by this Court on this appeal and in any event, the Patent Office could set a special testimony period subsequent to November 2, 1970 if it believed such action warranted.

aware Corporation, doing business in New Jersey.[4] Upon defendant's motions to dismiss the action for lack of personal jurisdiction, District Judge Reynier J. Wortendyke dismissed the discovery proceedings because neither defendant Jones nor defendant ICI was "residing or * * * within" the District of New Jersey and such District was not the one "wherein testimony is to be taken."

The authority of a district court to order discovery in patent interference is conferred by 35 U.S.C. § 24:

> "The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district * * *. The provision of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office."

Defendants argue in effect that personal jurisdiction in a patent interference discovery matter exists only when the first sentence of § 24 is applicable.[5] This reading of the statute would effectively remove non-resident aliens from the reach of discovery since no district of a United States court extends to foreign countries. However, we believe such a reading misapprehends the basic nature of § 24 discovery—namely, that it is ancillary to the proceedings in the Patent Office.[6] The Tenth Circuit has ably explained the meaning of the "ancillary" concept in the § 24 context:

> "The first sentence of § 24 authorizes the initiation of the ancillary court proceedings by the issuance of a subpoena. The second sentence extends the application of the civil rules pertaining to the production of documents to Patent Office proceedings. The generality of the second sentence is not restricted by the particularity of the first. The contention that jurisdiction is not obtained until a subpoena is issued and that only then may a Rule 34 motion be presented glorifies form over substance. Such formalistic procedure performs no useful purpose. * * * [T]he Rule 34 requirement of a 'pending' action is satisfied by the pendency of the interference proceedings. The judicial relief sought is ancillary to the administrative proceedings and is a continuation of the controversy pending before the agency." Natta v. Hogan, 392 F.2d 686, 690 (10th Cir. 1968).

Personal jurisdiction, therefore, is acquired when the parties file interference applications in the Patent Office. The resulting "interference" in the Patent Office is the primary proceeding. A motion for discovery *of documents* under Fed.R.Civ.P. 35, being necessarily limited to a *party* in the action already commenced in the Patent Office, requires no new or independent assertion of personal jurisdiction or issuance of summons. *See* In re Natta, 388 F.2d 215, 220 (3rd Cir. 1968); Natta v. Hogan, *supra,* 392 F.2d at 691.[7] A very different problem would be presented if a party sought to compel the attendance of a witness

---

4. ICI America, Inc. is a subsidiary of ICI. Affidavits filed in the District Court by the Assistant Secretary of ICI indicate that ICI America is a separate entity from ICI, and has no interest in the Patent Interferences here. It is unclear whether the District Court accepted the substance of these affidavits. But because ICI America's existence has no relevance to our decision in this case, no further reference will be made to it.

5. There is no question that subject-matter jurisdiction is conferred by § 24 and that

venue is proper in New Jersey under 28 U.S.C. § 1391(d), providing that "[a]n alien may be sued in any district."

6. *See generally* Babcock & Wilcox Co. v. Combustion Engineering Inc., 314 F. Supp. 235, 237 (D.Conn.1970).

7. No Constitutional problem would appear to exist in granting United States courts personal jurisdiction for purposes of ordering discovery of documents over parties who have filed applications for patents in the Patent Office and thereby sought the

**260**

through the use of a subpoena under Fed.R.Civ.P. 45. In such a case, the limitations of the first sentence of § 24 would appear to apply. *See* In re Natta, supra, 388 F.2d at 217.

■ If the requirements of personal jurisdiction over a party are met by a filing in the Patent Office, the only remaining question is whether service of the Rule 34 motion satisfied the requirements of due process. The notice given in this case was not only to defendants' attorney of record in the Patent Office, but also to defendants directly by mail. Such notices were both reasonable and adequate.

We recognize that our holding means that when a non-resident alien is a party to a patent interference, the other party may seek discovery of documents from him in any district. Such apparent anomaly does not result essentially from the ancillary nature of the discovery proceedings alone, but is also a consequence of the venue statute applicable to aliens. Under 28 U.S.C. § 1391(d), "[a]n alien may be sued in any district." But an alien undoubtedly may move for a change in venue to a more convenient forum. When both parties to the patent interference are United States citizens, the more restrictive provisions of 28 U.S.C. §§ 1391(b) and (c) reduce the number of districts available for discovery. It is these venue provisions which probably explain the location of the various Natta cases in which the alien party was seeking discovery against three domestic corporations.[8]

Defendants raise many substantive objections to the scope and nature of the discovery sought by 3M. These matters, however, should be presented in the first instance to the District Court which has not yet had an opportunity to rule on them.

protection and benefits of the United States patent law. *Compare* Internationalal Shoe Co. v. State of Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945) *with* Hanson v. Denckla, 357 U.S. 235, 250–253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Our reading of § 24 does

Accordingly, the judgment of the District Court will be reversed and the case remanded for further proceedings.

not imply that the Federal Rules of Civil Procedure create personal jurisdiction here. Rather, those Rules apply only to pre-existing jurisdiction which arises in the Patent Office, and to which this discovery is ancillary.

